Filed 3/30/23 In re Julian V. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re JULIAN V. et al., Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, Plaintiff and Respondent, v. A.M., Defendant and Appellant. | F085111 (Super. Ct. Nos. JVDP-21-000164, JVDP-21-000165, JVDP-21-000166) **OPINION** |

## THE COURT[*]

APPEAL from orders of the Superior Court of Stanislaus County. Ann Q. Ameral, Judge.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Boze, County Counsel, and Lindy Giacopuzzirotz, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Peña, Acting P. J., Meehan, J. and DeSantos, J.

A.M. (mother) appeals from the juvenile court's orders terminating her parental rights to her now four-year-old sons, Julian V. and Jackson V. (collectively, the twins), and 18-month-old son, Matthew V. (collectively, the children), pursuant to Welfare and Institutions Code section 366.26.[1] The sole issue on appeal is whether the Stanislaus County Community Services Agency (agency) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law because extended family members were not asked about the children's possible Indian[2] ancestry. The agency concedes that its investigation under ICWA was deficient. The parties filed a joint stipulation seeking a conditional reversal and limited remand to the juvenile court for ICWA compliance.

For the reasons discussed herein, we accept the agency's concession. Consistent with our recent decision in *In re K.H.* (2022) 84 Cal.App.5th 566 (*K.H.*), we conclude "the error is prejudicial because neither the agency nor the court gathered information sufficient to ensure a reliable finding that ICWA does not apply and remanding for an adequate inquiry in the first instance is the only meaningful way to safeguard the rights at issue." (*K.H.*, at p. 591.) Accordingly, we accept the stipulation, conditionally reverse the juvenile court's finding that ICWA does not apply and remand with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

The agency took the children into protective custody in August 2021 after Matthew was born prematurely and tested positive for methadone, methamphetamine, THC and opiates. Mother was married to Ronnie T. However, her boyfriend, Jonathan V., was named as the father on the twins' birth certificates and he held the

---

[1] Statutory references are to the Welfare and Institutions Code.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

children out as his own. He and mother were substance abusers with a significant criminal history, including drug-related charges. The children were placed together in foster care in November 2021.

On August 13, 2021, Jonathan signed a "PARENTAL NOTIFICATION OF INDIAN STATUS" (ICWA-020) form, indicating he may have Indian ancestry through his great-grandmother but he could not identify a tribe. An ICWA-020 form signed by social worker Carmen Hernandez was submitted for mother indicating she had no Indian ancestry. Hernandez also completed an ICWA-020 form for Ronnie stating he did not have any Indian heritage.

The agency filed a dependency petition, alleging the children came within the juvenile court's jurisdiction under section 300, subdivisions (b)(1) (failure to protect) and (j) (abuse of sibling) because of the parents' substance abuse. Ronnie was identified as the presumed father of all three children because of the marital presumption. Jonathan was identified as the presumed father of the twins.

The presumed fathers appeared at the detention hearing on August 13, 2021. Mother was incarcerated and did not attend the hearing. Jonathan told the juvenile court he possibly had a relative who was a member of a federally recognized tribe but he could not identify a specific tribe. The court directed him to inquire of his relatives. The court ordered Ronnie to undergo paternity testing as to all three children, ordered the children temporarily detained and continued the hearing to August 17, 2021, to give Jonathan time to hire private counsel.

On August 17, 2021, the juvenile court ordered the children detained and again asked Jonathan if he had any Indian ancestry. He said it was "unlikely" but had not asked his family. The court found it had no reason to believe ICWA applied, however, ordered Jonathan to make further inquiries. Diane V., Jonathan's mother, reported possible Cherokee ancestry.

3

Hernandez gathered information from Jonathan and Diane as well as from the Youth Connections database for purposes of completing the "NOTICE OF CHILD CUSTODY PROCEEDING FOR INDIAN CHILD" (ICWA-030) form. The Youth Connections database produced a printout, which included the names of 25 maternal relatives, their relationship to the children, birth date, date of death if applicable, age, and address. Twelve of the maternal relatives are deceased, including the maternal grandmother. The agency sent letters to 13 maternal relatives, including the maternal grandfather, a maternal uncle, various "great" and "great-great" relatives and several first cousins once removed, and on September 14, 2021, filed an ICWA-030 form, which it sent to the Cherokee Nation of Oklahoma, the Eastern Band of Cherokee Indians, the United Keetoowah Band of Cherokee Indians and the Bureau of Indian Affairs (BIA) Sacramento Regional Office.

On September 28, 2021, the juvenile court convened the jurisdiction and disposition hearing and found Jonathan qualified as the twins' presumed father. The court continued the hearing to October 15, 2021, at which time the court adjudged the children dependents as alleged in the petition, ordered reunification services for mother and Ronnie as to all three children and for Jonathan as to the twins. Ronnie and Jonathan were ordered to submit to paternity testing, which subsequently established Jonathan's biological paternity and excluded Ronnie. Ronnie was dismissed from the case.

The BIA Sacramento responded on September 29, 2021, acknowledging the child custody proceedings and the agency's request for assistance in identifying the children's possible tribal affiliation. It also acknowledged that the agency notified the Cherokee tribes based on its inquiry with the family and directed the agency to follow up with the tribes if they did not respond. In letters dated in October and November 2021, the Cherokee Nation, Eastern Band of Cherokee Indians and the United Keetoowah Band of

4

Cherokee Indians informed the agency the children were not Indian children based on the information provided.

On November 12, 2021, Diane filed a modification petition (§ 388) asking the juvenile court to enforce its order granting her monthly visitation. The court granted the petition at a hearing on December 8, 2021, and found ICWA did not apply.

In its report for the six-month review hearing, the agency recommended the juvenile court terminate reunification services and set a section 366.26 hearing to consider a permanent plan of adoption. The children were well-loved and cared for by their foster parents and mother and Jonathan were not complying with their court-ordered services. Mother and Jonathan were not drug testing and had felony charges for failure to appear in court, bringing a controlled substance into prison, possession of drugs in prison/jail, grand theft, burglary and possession of a controlled substance.

On May 19, 2022, at a contested six-month review hearing, the juvenile court found ICWA did not apply, terminated reunification services and set a section 366.26 hearing for September 15, 2022. Neither mother nor Jonathan challenged the setting hearing by extraordinary writ petition.

In its report for the section 366.26 hearing, the agency recommended the juvenile court terminate parental rights. The agency reported ICWA did not apply, citing the juvenile court's prior finding.

On September 15, 2022, the juvenile court convened the section 366.26 hearing and found ICWA did not apply. The court set a contested hearing on October 6, 2022. At the contested hearing, the court found the children were likely to be adopted and terminated parental rights.

## DISCUSSION

Mother contends the agency discussed placement with multiple maternal family members, including a "maternal great grandmother, maternal great grandfather, maternal

5

grandfather, and maternal first cousin," but neglected to ask these family members whether the children had Indian ancestry. Therefore, she argues, the agency failed to fulfill its duty of initial inquiry under ICWA and the juvenile court erred in finding ICWA did not apply. We concur.

A.      *ICWA Inquiry Duties, Generally*

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption of foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) Under California law adopted pursuant to ICWA, the juvenile court and the agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a).) An " 'Indian child' " is defined in the same manner as under federal law, i.e., as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" (25 U.S.C. § 1903(4); accord, § 224.1, subd. (a) [adopting the federal definition].)

"Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case. These requirements are sometimes collectively referred to as the duty of initial inquiry." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 741.)

Federal regulations implementing ICWA require courts to ask participants in a dependency case whether they know or have reason to know the child is an Indian child and to instruct the parties to inform the court " 'if they subsequently receive information that provides reason to know the child is an Indian child.' " (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 741.)

California law, however, "more broadly imposes on [the agency] and [the] juvenile court[] (but not parents) an 'affirmative and continuing duty to inquire' whether

6

a child in the dependency proceeding 'is or may be an Indian child.' " (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 741–742, quoting § 224.2, subd. (a).)  That duty to inquire "begins with [the] initial contact … and obligates the juvenile court and [the agency] to ask all relevant involved individuals whether the child may be an Indian child." (*In re T.G.* (2020) 58 Cal.App.5th 275, 290, citing § 224.2, subds. (a)–(c).)

Under the statute, when the agency takes a child into its temporary custody, its duty of initial inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child …." (§ 224.2, subd. (b).)  ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [extended family member "defined as provided in [§] 1903" of ICWA.)

The juvenile court, in turn, at a party's first appearance, must ask "each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child" (§ 224.2, subd. (c)) and require each party to complete an ICWA-020 form (Cal. Rules of Court, rule 5.481(a)(2)(C)).[3]  "The parties are instructed to inform the court 'if they subsequently receive information that provides reason to know the child is an Indian child.' (25 C.F.R. § 23.107(a) (2020); § 224.2, subd. (c).)" (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

If that initial inquiry gives the juvenile court or agency a "reason to believe that an Indian child is involved," then their duty to "make further inquiry regarding the possible

---

[3]      All further rule references are to the California Rules of Court.

Indian status of the child" is triggered. (§ 224.2, subd. (e).) If that further inquiry results in a reason to know the child is an Indian child, then the formal requirements of section 224.2 apply. (§§ 224.2, subd. (f) & 224.3, subd. (a)(5).)

Additionally, the agency is required by the rules to document its inquiries. Rule 5.481(a)(5) provides, "The petitioner must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new information is received, that information must be expeditiously provided to the tribes."

The juvenile court may find ICWA does not apply to a child's proceeding if it finds the agency's duty of inquiry has been satisfied and there is no reason to know that child is an Indian child. (§ 224.2, subd. (i)(2); rule 5.481(b)(3)(A).) The juvenile court's finding that ICWA does not apply thus " ' "implies that … social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry." [Citations.]' " (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

Social workers have no duty under federal law to ask extended family members about possible tribal membership. (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069.) The error, if any, is an error of state law. (*Ibid.*)

B.      *Standard of Review*

We review a juvenile court's ICWA findings under a hybrid substantial evidence/abuse of discretion standard, reviewing for substantial evidence whether there is reason to know a child is an Indian child, and for abuse of discretion a juvenile court's finding that an agency exercised due diligence and conducted a "proper and adequate" ICWA inquiry. (*K.H.*, *supra*, 84 Cal.App.5th at p. 601.)

8

Where, as here, the issue on appeal concerns the agency's due diligence in conducting an adequate inquiry under ICWA, we review the juvenile court's factual findings for substantial evidence and its ultimate determination whether ICWA applies under the abuse of discretion standard. (*K.H.*, *supra*, 84 Cal.App.5th at p. 601.)

## C. *The Agency and the Juvenile Court's Inquiry*

Pursuant to its duty under section 224.2, the juvenile court had mother complete an ICWA-020 form for the purpose of determining whether she had any Indian heritage. She indicated that she did not and there is no evidence the agency asked her about any relatives that it could ask. However, the agency did identify maternal relatives in its effort to place the children. Some of those relatives, notably the maternal grandfather and a maternal uncle, qualify as extended family members under ICWA. However, there is no evidence the agency attempted to contact them. In addition, there are other maternal relatives mother claims were in contact with the agency regarding placement and are extended family members but were not interviewed regarding Indian ancestry. She refers specifically to a maternal great-grandmother, maternal great-grandfather, maternal grandfather and maternal first cousin. We find no reference to these relatives on the pages mother cites and only the maternal grandfather and first cousin would qualify as extended family members for ICWA purposes. In any event, there were extended family members (i.e., the maternal grandfather and maternal uncle) the agency could have contacted to fulfill its initial inquiry obligations. Since it did not, substantial evidence does not support a finding the agency conducted an adequate inquiry under ICWA. Therefore, the juvenile court abused its discretion in finding ICWA did not apply.

## D. *Prejudice*

We further conclude that the inquiry error was prejudicial. Therefore, we conditionally reverse the juvenile court's order and remand the matter for the limited purpose of compliance with ICWA.

Because the failure in this case concerned the agency's duty of initial inquiry, only state law is involved. Therefore, we may not reverse unless the error was prejudicial under state law. "(Cal. Const., art. VI, § 13 ['No judgment shall be set aside … unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice'].)" (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742.)

Here, the miscarriage of justice lies in the agency's failure to satisfy its inquiry duties under ICWA. As we explained in *K.H.*, "[t]he relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination. It necessarily follows that the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply." (*K.H.*, *supra*, 84 Cal.App.5th at p. 591.)

The extent of the agency's inquiry was confined to asking mother if she had any Indian ancestry and recording her negative response. However, in the process of attempting to locate relatives for placement, the agency identified maternal relatives who fall within ICWA's definition of an extended relative. The record is silent, however, as to what efforts if any were made to contact those relatives in an effort to comply with ICWA. "Where a record is silent or nearly silent with respect to an ICWA inquiry at the first step, a finding of harmlessness necessarily rests on speculation" and "is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes." (*K.H.*, *supra*, 84 Cal.App.5th at p. 611.) Therefore, the error in this case is prejudicial.[4]

---

[4] Although we conclude prejudicial error occurred in this case, we stress that it is *not* because an inadequate inquiry renders the juvenile court's ICWA finding reversible

Before reversing or vacating a judgment based upon a stipulation of the parties, an appellate court must find "both of the following: [¶] (A) There is no reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal. [¶] (B) The reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement." (Code Civ. Proc., § 128, subd. (a)(8).) Because this case would be subject to reversal to permit compliance with ICWA and corresponding California statutes and rules absent the parties' stipulation, a stipulated remand advances the interests identified by Code of Civil procedure section 128, subdivision (a)(8). (See *In re Rashad H*. (2000) 78 Cal.App.4th 376, 379–382.)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the agency to comply with the inquiry and documentation provisions set forth in section 224.2, subdivision (b) and rule 5.481(a)(5). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall vacate its existing orders and proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, its ICWA finding shall be reinstated. In all other respects, the court's orders terminating parental rights are affirmed.

---

per se. Rather, it is because the record is "so undeveloped that the inadequacy of the inquiry is readily apparent and there simply is no basis on which to find substantial evidence would support a contrary conclusion. Consequently, there also is no basis on which the court could exercise discretion to approve the patently inadequate inquiry and record. Under these circumstances, it is perhaps fair to say that the error and need for reversal are 'clear.' " (*K.H*., *supra*, 84 Cal.App.5th at p. 618.)